**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SALIM FORD,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO. 22-4987** |
| **KATHY BRITTAIN,** *et al.*, | |
| **Respondents.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                              **March 18, 2026**

After being granted leave by the Third Circuit, Petitioner Salim Ford filed a counseled

second or successive petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

Respondents provided voluntary open file discovery, and Petitioner moved to stay proceedings

before this Court while he seeks to exhaust in state court a claim based on evidence obtained

during the open file review.[2] After full briefing and an evidentiary hearing on the habeas petition

and full briefing on the motion to stay, Magistrate Judge José Raúl Arteaga entered a Report and

Recommendation ("R&R") that the motion to stay be denied and the habeas petition be

dismissed or denied.[3]

Petitioner, through counsel, objects to the R&R regarding its conclusion regarding both

the motion to stay and the habeas petition.[4] Respondents filed a response to the objections,[5] to

---

[1] Initial Habeas Pet. [Doc. No. 2]; Mem. Supp. Habeas Pet. [Doc. No. 5].

[2] Mot. to Stay [Doc. No. 62].

[3] R&R [Doc. No. 72].

[4] Pet's. Obj. [Doc. No. 78].

[5] Resp't Resp. to Pet's. Obj. [Doc. No. 81]

which Petitioner filed a reply in support of his objections.[6] Upon consideration of the objections and record of this case, the Court will approve and adopt the R&R with limited exceptions, and deny Petitioner's Motion to Stay and deny the Petition for a Writ of Habeas Corpus.

## I.    INTRODUCTION

### A.    Factual Background

The Court adopts the history set forth in the R&R, which has not been challenged in Ford's objections. The Court restates the history that is relevant to Petitioner's objections.

On July 31, 2004, between 12:30 a.m. and 12:40 a.m., John Thompkins[7] was shot multiple times and killed while inside a parked vehicle.[8] Based on physical evidence at the scene, the shooter fired a .38 or .357 caliber gun at Thompkins while standing outside of the vehicle's passenger-side window.[9] A neighbor who heard the shots immediately called for a police response.[10] Although officers on the scene searched for a gun, no murder weapon was recovered.[11] Police had no initial suspects, but eventually obtained written statements implicating Ford from both Ronald Clay (a/k/a "Bow" or "Boo") and Charles Young. Clay gave the police his statement after being arrested for his role in an unrelated domestic dispute.[12]

---

[6] Pet'r Resp. Supp. Obj. [Doc. No 86].

[7] While the R&R spells the victim's name as "Tompkins," other documentation in the case spells the name as "Thompkins." Indeed, interviews of the victim's siblings spell the last name as Thompkins, so that is the spelling this Court adopts.

[8] *See* Prelim. Hr'g Tr. 4/20/2005 at 5-6; Trial Tr. 3/29/2006 at 39, 44, 50-52, 54, 57, 64-77, 221.

[9] Trial Tr. 3/30/2006 at 9-15.

[10] Trial Tr. 3/29/2006 at 57-58.

[11] Trial Tr. 3/30/2006 at 20, 24.

[12] Trial Tr. 3/29/2006 at 226-30; Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 33-35 [Doc. No. 2].

Young gave his statement to the police while in custody for crimes unrelated to Thompkins' murder.[13]

In their statements, both Clay and Young represented that before Thompkins was killed, they had observed an individual who met Ford's physical description carrying a handgun and chasing Thompkins.[14] Young stated that he "was sitting on the front steps across the street from [Thompkins'] car with Karen Charles and 'Boo,'" *i.e.*, Clay, when Thompkins ran by, "being chased by Saleem who was about [20 feet] behind. . . ."[15] Clay described "the boy that did the shooting" as "about 17-23 years old, dark skin, about 6'0" tall, skinny built, has a little mustache, sideburns and hair under his chin."[16] According to Young's statement, he identified Ford in a photograph.[17]

Clay also identified Ford in a photograph.[18] When shown Ford's photograph, Clay said, "Yes that's definitely him. No doubt in my mind."[19] According to Clay's statement, Ford was carrying a .38 or .357 caliber weapon.[20] At one point, Clay lost sight of Ford and Thompkins.[21]

---

[13] Trial Tr. 3/29/2006 at 103-04; Initial Habeas Pet., Ex. G, February 1, 2005, Investigation Interview Record: Charles Young, at ECF 36-42 [Doc. No. 2].

[14] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 34; Ex. G, February 1, 2005 Investigation Interview Record: Charles Young, at ECF 38-39 [Doc. No. 2].

[15] Initial Habeas Pet., Ex. G, February 1, 2005, Investigation Interview Record: Charles Young, at ECF 38 [Doc. No. 2].

[16] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 34 [Doc. No. 2].

[17] Initial Habeas Pet., Ex. G, February 1, 2005, Investigation Interview Record: Charles Young, at ECF 40 [Doc. No. 2].

[18] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 35 [Doc. No. 2]; Trial Tr. 3/29/2006 at 240; Trial Tr. 3/30/2006 at 43-47.

[19] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 35 [Doc. No. 2].

[20] *Id.* at ECF 34.

[21] *Id.*

According to Young, Ford went to the vacant lot at the scene of the shooting to wait for Thompkins to return.[22] Clay and Young both stated that they saw Thompkins return to the street and enter his parked car within four to ten minutes of the chase.[23] They also saw Ford emerge from the lot, approach Thompkins' vehicle, and shoot through the passenger side window four or five times.[24]

According to Clay's statement, he had seen the person responsible for the shooting selling crack cocaine "on Hanson Street between Woodland and Paschall . . . almost every day for the last three months" before he provided his statement.[25] He said the shooter would hang with two guys known as Pooh and Saleem, but neither were present at the time of the shooting.[26] Three days after Clay provided his statement about the shooting, he returned to the police, appearing shaken, and gave another written statement reporting that three individuals had confronted him about having spoken with the police.[27]

Young and Clay's statements were read into evidence during Ford's trial. However, when each was called to the stand, each recanted his prior statement, stated that he had not been present at the murder scene, and explained that his earlier statements reflected his intent to give police desired information after having been encouraged to do so.[28] At the time, both were in custody at the Philadelphia Industrial Correctional Center ("PICC").[29]

---

[22] Initial Habeas Pet., Ex. G, February 1, 2005 Investigation Interview Record: Charles Young, at ECF 38 [Doc. No. 2].

[23] *Id.* at ECF 38-39; Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 34 [Doc. No. 2].

[24] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 34;  Ex. G, February 1, 2005 Investigation Interview Record: Charles Young, at ECF 38 [Doc. No. 2].

[25] Initial Habeas Pet., Ex. F, August 11, 2004, Investigation Interview Record: Ronald Clay, at ECF 35 [Doc. No. 2].

[26] *Id.*

[27] *See* Trial Tr. 3/29/2006 at 252-58.

[28] *Id.* at 102-04; 220-30.

[29] *See id.* at 98, 101.

Young testified that he knew Clay as Boo or Bow, that he had "seen him downstairs [at PICC], but we don't socialize like that," and they were "on different blocks," and had never spoken about the murder on Paschall Avenue.[30] When asked about the events on the evening of the murder, Young testified that, "I wasn't there, but I said that because I figured I could get help [with my own charges]. Regardless of whether they help me or not—I can't tell. I can't see that man go to jail for something I am not really sure if he did nor not."[31] Young acknowledged that Ford was in a photograph that the police had shown him when he gave his statement but testified that he had identified Ford only after the police "pointed [Ford] out" in the photo array.[32] When questioned about the discrepancy between his statement and his trial testimony, Young explained, "I probably didn't remember it then. Who knows, I barely remember it now. I don't remember what went on all the way back then. I am just concerned about me and my problems."[33]

During Clay's testimony, he explained that when he gave his statement, the police "kind of described to me what happened. So, I was going along with what they said."[34] Clay also testified that the second statement he had given to the police, related to him having been intimidated for making his first statement, was not true and that he had run to the police station on the day he gave his second statement only because he had robbed a Rite Aid and needed an alibi.[35]

---

[30] *Id.* at 98-99.

[31] *Id.* at 153; *see also id.* at 102 ("I wasn't nowhere around."), 145 ("I wasn't even there. I don't know. I just said what I said to make them feel like that's what they wanted to hear.").

[32] *Id.* at 146-49.

[33] *Id.* at 144.

[34] *Id.* at 237; *see also id.* at 224-25 (denying any personal knowledge of Thompkins' murder); 239 ("I was just agreeing to everything. I wanted to get out of there.").

[35] *See id.* at 252-58.

5

There was no further witness testimony at the trial identifying Ford as the shooter. Having heard Young and Clay's conflicting prior statements and trial testimony along with the other evidence presented at trial, a Philadelphia County jury convicted Ford for the first-degree murder of Thompkins, carrying a firearm without a license, and possession of an instrument of crime.[36] Ford was sentenced to an aggregate sentence of life in prison.

### B.      Procedural Background

Following his conviction, Ford unsuccessfully appealed and his conviction was affirmed.[37] He filed a petition under the Pennsylvania Post-Conviction Relief Act ("PCRA") claiming several grounds of ineffective assistance of counsel, including failure to interview and call an alleged witness, Karen Charles, who signed an affidavit in September 2007 stating that she "would have testified Salim Ford was not the person I witnessed shoot into the victim's automobile that night."[38] The PCRA court denied relief, and the Pennsylvania Superior Court affirmed.[39]

In 2012, Ford filed a *pro se* federal petition for habeas corpus, raising the claims from his first PCRA petition.[40] This first petition pursuant to § 2254 was denied as lacking merit.[41] The Third Circuit denied a certificate of appealability.[42]

---

[36] *See* Trial Tr. 3/31/2006 at 12-13.

[37] *Commonwealth v. Ford*, 927 A.2d 652 (Pa. Super. Ct.  Mar. 23, 2007).

[38] *See Commonwealth v. Ford*, No. CP-0505-00101-2005, First PCRA Petition (Phila. Cnty. Ct. Comm. Pl. Feb. 19, 2008).

[39] *Commonwealth v. Ford*, 24 A.3d 452 (Pa. Super. Ct. Feb. 11, 2011).

[40] *Ford v. Superintendent, SCI-Frackville*, No. 12-cv-01278, 2013 WL 5457801, at *13-27 (E.D. Pa. Sept. 19, 2013).

[41] *Id*. at *1-2, *28.

[42] *Ford v. Superintendent, SCI-Frackville*, No. 12-cv-1278, Third Circuit Denial of Certificate of Appealability, [12cv1278, Doc. No. 24] (E.D. Pa. Feb. 18, 2024).

Ford filed additional PCRA petitions in state court. After filing and withdrawing his second PCRA petition, Ford *pro se* filed a third PCRA petition.[43] Then, Ford filed a counseled amended third PCRA petition.[44] In that petition, Ford alleged that newly discovered evidence warranted relief. Particularly, Ford identified two additional alleged witnesses to the murder who did not testify at trial—Earl Woods and Michael Garmon.[45] Both men claimed they witnessed Wydell Ward (a/k/a "Woo") commit the crime.[46]

After an evidentiary hearing before the PCRA court, at which Woods did not appear, the court determined that neither Ford nor Garmon testified credibly and denied Ford's third PCRA petition.[47] The denial was affirmed by the Pennsylvania Superior Court.[48]

In December 2019, Ford filed a counseled fourth PCRA petition, alleging newly discovered evidence warranted relief.[49] He claimed that he had identified another purported witness to Thompkins' murder—Utilio Frazier, who claimed that Wydell Ward committed the crime and signed an affidavit to that effect.[50] Ford amended the fourth PCRA petition to include a *Brady v. Maryland*[51] claim that the Commonwealth failed to disclose alleged misconduct of

---

[43] As summarized by the R&R: "Ford withdrew his second *pro se* PCRA petition (filed on August 23, 2012, before relief was denied in his first *habeas* proceeding) on March 13, 2015, but before withdrawing it, he also filed a third *pro se* PCRA petition on March 2, 2015. *See Commonwealth v. Ford*, No. CP-51-CR-0500101-2005 (Phila. Cnty. Ct. Comm. Pl. Aug. 23, 2012) (Second PCRA Pet.); *id.* (March 2, 2015) (Third PCRA Pet.). Ford then filed a supplement to his third *pro se* PCRA petition on March 17, 2015, and a supporting memorandum of law on May 7, 2015. *See id.* (Mar. 17, 2015) (Supplement to Third PCRA Pet.); *id.* (May 7, 2015) (Memorandum of Law in Support of Third PCRA Pet.)." R&R at 8 n.10 [Doc. No. 72].

[44] *Commonwealth v. Ford*, No. CP-51-CR-0500101-2005, Third PCRA Petition (Aug. 14, 2017).

[45] *Id.*

[46] *Id*.

[47] *See Commonwealth v. Ford*, No. 1632 EDA 2018, 2019 WL 4543127, at *1-3 (Pa. Super. Ct. Sept. 19, 2019).

[48] *Id*.

[49] *Commonwealth v. Ford*, CP-51-CR-0500101-2005, Fourth PCRA Petition (Feb. 12, 2020).

[50] *Id.*

[51] 373 U.S. 83 (1963).

Detective Gregory Rodden, who interviewed witnesses in Ford's case.[52] The PCRA court denied the fourth PCRA petition as untimely and meritless.[53]

Ford sought, and was granted, leave by the Third Circuit to file a second or successive habeas petition pursuant to 28 U.S.C. § 2254.[54] In granting the application, the Third Circuit found Ford had

> made a prima facie showing that his proposed habeas petition relies on a factual predicate that (i) "could not have been discovered previously through the exercise of due diligence," and (ii) "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."[55]

The Third Circuit cautioned that its decision was "based on a limited record" and did not address the underlying merits of Ford's claims.[56]

In December 2022, Ford filed his second § 2254 habeas petition and a counseled Memorandum in Support of his petition, followed by a counseled Amended Petition on February 6, 2023.[57] Respondents offered Ford's counsel the opportunity to conduct a complete review of open file discovery.[58] Magistrate Judge Strawbridge stayed the briefing schedule pending the file review.[59] In September 2023, this case was reassigned to Magistrate Judge Arteaga, who granted Ford leave to file a Second Amended Petition.[60]

---

[52] *Id.*

[53] *Commonwealth v. Ford*, No. 614 EDA 2021, 2022 WL 214290, at *7-9 (Pa. Super. Ct. Jan. 25, 2022).

[54] 12/13/22 Third Circuit Order [Doc. No. 1].

[55] *Id*. (quoting 28 U.S.C. § 2244(b)(2)).

[56] 12/13/22 Third Circuit Order [Doc. No. 1].

[57] Initial Habeas Pet. [Doc. No. 2]; Mem. Supp. Habeas Pet. [Doc. No. 5]; Am. Habeas Pet. [Doc. No. 14].

[58] Joint Mot. to Stay ¶ 13 [Doc. No. 19].

[59] 7/28/23 Order [Doc. No. 20].

[60] 9/18/23 Order [Doc. No. 24]; 1/2/24 Order [Doc. No. 31].

Thereafter, Ford filed a "Supplemental Petition for Writ of Habeas Corpus" or "Supplemental Memorandum in Support of his Petition for Writ of Habeas Corpus" on February 15, 2024.[61] This supplemental document identified, for the first time, a note discovered in the homicide file for the case which states: "Saleem" "2 involved" "1 arrested" "P.O. Phillips 17th 5 Sq" "snitch."[62]

Over Ford's objection, Magistrate Judge Arteaga held an evidentiary hearing on August 9, 2024, "for factual development of Ford's claim that he has newly discovered evidence demonstrating actual innocence."[63] Utilio Frazier was the only witness who testified at that hearing.[64]

On April 3, 2025, Ford filed a Motion to Stay proceedings pending resolution of a fifth PCRA petition, based on the note he identified in the open file review.[65] This fifth PCRA petition was filed on September 5, 2024, and amended on April 2, 2025.[66]

On July 11, 2025, Magistrate Judge Arteaga issued an R&R recommending that the Motion to Stay be denied and recommending the dismissal or denial of Ford's second habeas petition.[67] Ford objected to the R&R, claiming: (1) the R&R did not conduct an independent review of procedural default; (2) the R&R was based on an unreasonable application of clearly

---

[61] Supp. Habeas Pet. [Doc. No. 34].

[62] *Id*. at 5.

[63] 6/27/2024 Order [Doc. No. 46].

[64] *See* Evidentiary Hr'g Tr. at 3 [Doc. No. 51].

[65] Mot. to Stay at 5 [Doc. No. 62].

[66] *Id*. at 4-5.

[67] R&R at 2 [Doc. No. 72].

established federal law or was contrary to clearly established federal law; and (3) the R&R "misapplied" federal law by not conducting a holistic review of actual innocence.[68]

## II.      LEGAL STANDARD

When a petitioner objects to a magistrate judge's R&R, the District Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . . [T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."[69]

## III.     MOTION TO STAY

The R&R recommended denying the motion to stay, finding that the claim is not properly before the Court because it has not been evaluated by the Third Circuit pursuant to § 2244(b)(3)'s prohibition on second or successive habeas petitions.[70] Section 2244(b)(3) requires that a petitioner seeking to file a second or successive § 2254 habeas petition (or application for habeas corpus) "move in the appropriate court of appeals for an order authorizing the district court to consider the application."[71] "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements [of § 2244(b)(2)]."[72]

The standard for a court of appeals to grant a second or successive habeas petition refers to the "application," rather than to individual claims.[73] Section 2244 provides an additional protective bar to the grant of a second or successive 2254 petition, requiring "[a] district court

---

[68] Pet's. Obj. at 4-5 [Doc. No. 78].

[69] 28 U.S.C. § 636(b)(1).

[70] R&R at 31-33 [Doc. No. 72].

[71] 28 U.S.C. § 2244(b)(3)(A).

[72] 28 U.S.C. § 2244(b)(3)(C).

[73] 28 U.S.C. § 2244(b)(3)(D).

[to] dismiss any *claim* presented in a second or successive *application that the court of appeals has authorized* to be filed unless the applicant shows that the claim satisfies the requirements of this section."[74] This section contemplates a claim's inclusion in a second or successive petition that was authorized by the court of appeals, but does not meet § 2244's requirements.

Further, Magistrate Judge Arteaga stayed briefing and authorized filing of an amended petition based on Petitioner's open file discovery. Permitting such a stay necessarily contemplates the addition of evidence from the file review into the amended petition, which post-dates review by the Third Circuit. Indeed, Ford did include the note-related *Brady* claim in his Supplemental Habeas Petition.

Accordingly, this Court declines to adopt the R&R's resolution of this issue and finds that the claim is properly before this Court such that it may consider Ford's Motion to Stay on the merits. The Court further declines to adopt the R&R's alternative consideration of the note-related *Brady* claim on the merits. This Court considers the merits of the Motion to Stay, but it does not consider the merits of the underlying claim, as may be developed through Ford's pending PCRA petition.

This Court may grant a stay for a petitioner to return to state court to exhaust a claim if (1) the petitioner demonstrates good cause for failure to exhaust his claim in state court; (2) the unexhausted claims are meritorious; and (3) the petitioner has not engaged in abusive litigation tactics or some other intentional delay.[75]

---

[74] 28 U.S.C. § 2244(b)(4) (emphasis added).

[75] *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

11

Here, Ford has demonstrated good cause for failing to exhaust the note claim. He could not have identified this note prior to Respondents offering Ford's counsel the opportunity to conduct an open file review in the course of this habeas litigation.

Ford must also demonstrate that his *Brady* claim related to the note is meritorious.[76] In order to succeed on a *Brady* claim, Ford must establish that the evidence had exculpatory or impeachment value; the evidence was suppressed; and Ford was prejudiced as a result because the alleged evidence was "material."[77] Ford claims the note stating "Saleem" "2 involved" "1 arrested" "P.O. Phillips 17th 5 Sq" "snitch" had exculpatory value because it referenced not Salim Ford, but rather Saleem Bey.[78] According to Petitioner, Saleem Bey stood trial for murder in December 2004.[79] John Thompkins's brother, Kenneth Thompkins, was a surviving victim and was supposed to be a witness against Bey at his trial.[80] Kenneth Thompkins failed to appear at Bey's first trial for the murder in December 2004—less than six months after his brother's murder.[81] Kenneth later told detectives he feared retaliation from Bey.[82]

Ford claims the note references the murder Bey committed, wherein evidence demonstrated that Bey killed Terry Swanson and an unidentified person shot Kenneth Thompkins.[83] He argues that Officer Phillips was a member of the "5-squad" in the 17th Police District, which was investigating unsolved murders in South Philadelphia.[84] Further investigation

---

[76] *See id.* at 278.

[77] *See Strickler v. Greene*, 527 U.S. 263, 280-82 (1999).

[78] Mot. to Stay, Ex. A, Fifth PCRA Pet., at 5-8 [Doc. No. 62-1].

[79] *Id*. at 7; Supp. Habeas Pet. at 5 [Doc. No. 34].

[80] Supp. Habeas Pet. at 5 [Doc. No. 34].

[81] *Id*.

[82] *Id*.

[83] Mot. to Stay, Ex. A, Fifth PCRA Pet., at 7-8 [Doc. No. 62-1].

[84] *Id*. at 8.

allegedly showed that, at the time of his murder, John Thompkins was driving a car that he and Kenneth both frequently used.[85]

Ford has failed to establish the authenticity or suppression of this note. Ford did not attach the note as an exhibit to his motion to stay, his PCRA petition claiming a *Brady* violation based on the note which he attached as an exhibit to the motion, nor his supplemental habeas petition raising the claim before this Court. He did not submit any affidavits regarding the note's origin, author, substance, or meaning. Further, he had the opportunity to present evidence regarding the note at an evidentiary hearing before Magistrate Judge Arteaga. He failed to present such evidence as relevant to his claims of actual innocence. While the substance of the note and Ford's argument regarding its meaning are concerning to this Court, on the record before it, Ford has not demonstrated that the *Brady* claim is meritorious. Accordingly, he fails to satisfy the requirements for a *Rhines* stay, and the Motion to Stay will be denied.

## IV.    HABEAS PETITION

There are several barriers to a federal court's review of a petitioner's claims within a habeas corpus petition. As noted above, there are additional barriers for a second or successive petition.

First, a petitioner must seek leave from the Third Circuit Court of Appeals before filing a second or successive petition. Leave may be granted if the Court of Appeals "determines that the application makes a prima facie showing that the application satisfies the requirements of [§ 2244(b)(2)]."[86]

---

[85] *Id.*

[86] 28 U.S.C. § 2244(b)(3)(C).

Second, the district court has an independent responsibility to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of [§ 2244(b)(2)]."[87]

If claims in the second or successive habeas petition survive these two rounds of review, they are still subject to the prohibitive bars of § 2254. Federal courts cannot grant a habeas claim if it is unexhausted, procedurally defaulted, and does not meet an exception to exhaustion or procedural default.[88] Therefore, the Court must consider exhaustion and procedural default for each claim.

If a state court fully considered the merits of a claim, a federal court may not grant habeas relief unless the adjudication: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.[89]

Accordingly, the Court may not reach the merits of the claims presented in a second or successive habeas petition unless: (1) the Third Circuit finds the application to submit a second or successive petition makes a prima facie showing that the proposed petition relied: (a) on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was not previously available or (b) "on a factual predicate that (i) could not have been discovered previously through the exercise of due diligence, and (ii) if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty

---

[87] 28 U.S.C. § 2244(b)(4); *see also Goldblum v. Klem*, 510 F.3d 204, 219-20 (3d Cir. 2007).

[88] *See* 28 U.S.C. § 2254.

[89] *See id.*

14

of the underlying offense";[90] (2) the district court finds that each claim presented either relies on a new rule of constitutional law made retroactive to cases on collateral review or relies on a factual predicate that would establish actual innocence; (3) each claim was exhausted in state court or is procedurally defaulted; (4) each claim was considered on the merits by the state court or meets an exception to procedural default; and (5) each claim that was considered on the merits by the state court involved an adjudication that (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.[91] Petitioner confuses these varying levels of review and barriers to relief throughout his briefing.

### A.      Procedural Default and Exhaustion

Petitioner presents claims that are procedurally defaulted or unexhausted. A federal court may not review a habeas claim that was dismissed on procedural grounds based on an independent and adequate state procedural rule.[92] "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."[93] A procedural rule is independent if it is independent of the federal question presented by the petitioner. It is adequate if the rule was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."[94]

---

[90] 12/13/22 Third Circuit Order [Doc. No. 1].

[91] 28 U.S.C. § 2254.

[92] *Coleman v. Thompson*, 501 U.S. 722, 749 (1991).

[93] *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (quoting *Colemen*, 501 U.S. at 732).

[94] *Szuchon v. Lehman*, 273 F.3d 199, 327 (3d Cir. 2001).

Petitioner's claim that the Commonwealth withheld *Brady* evidence regarding Detective Rodden's misconduct is procedurally defaulted. While Petitioner presented this claim to state court, it was dismissed as untimely by the PCRA court. This dismissal was affirmed on appeal. The state courts alternatively denied the claim on the merits. However, this alternative merits analysis does not excuse procedural default nor does it render the dismissal not an independent and adequate procedural ground.[95]

The state court properly applied a state procedural rule to dismiss the claim as untimely. Under the PCRA, a petition filed more than one year after the date on which the judgment becomes final is untimely unless, among other exceptions, "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence."[96] The state court determined that Ford's *Brady* claim was untimely because the facts upon which the claim is predicated could have been ascertained by the exercise of due diligence. This state procedural requirement is separate from the merits analysis of a *Brady* claim.[97]

Pennsylvania's PCRA timeliness requirement, and the diligence requirement of the newly discovered fact exception, is an independent and adequate state law ground.[98] Accordingly, the

---

[95] A state court can still "look to federal law . . . as an alternative holding while still relying on an independent and adequate state ground" as long as it states "clearly and expressly that [its decision] is ... based on bona fide separate, adequate, and independent grounds." *Coleman*, 501 U.S. at 733 (internal citations omitted).

[96] 42 Pa. Const. Stat. § 9545(b)(ii) (2018).

[97] As Petitioner notes, *Brady* does not include a diligence requirement. However, the PCRA timeliness requirement does include such a requirement.

[98] *See Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) ("A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." (internal citations omitted)); *see also Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. Super. 2007) ("[T]he exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim.").

Detective Rodden *Brady* claim was procedurally defaulted. This Court cannot review the merits of the claim unless Ford meets a procedural default exception.

Procedural default cannot be overcome unless a habeas petitioner shows: (a) cause for failure to comply with state procedural rules and resulting prejudice; or (b) that a fundamental miscarriage of justice will result if the claim is not considered.[99] A fundamental miscarriage of justice ordinarily requires a strong showing of actual innocence.[100] This showing of actual innocence standard for procedural default mirrors the standard for § 2244 innocence based on a new factual predicate.

Petitioner's *Brady* claim based on the newly discovered note is unexhausted. Petitioner has not yet fully litigated this claim in state court. Exhaustion gives "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[101] In Pennsylvania, one complete round of appellate review process requires the claim be presented at least to the Pennsylvania Superior Court.[102] The claim is currently being litigated in state court, so the Court may not review the merits of this claim.

The actual innocence claim is not a standalone ground on which habeas relief can be granted. As Ford readily notes "Frazier's affidavit and/or testimony adds nothing to the disposition of the underlying constitutional claims."[103] As such, the Court will not evaluate the actual innocence claim regarding Frazier's testimony as an independent claim.

---

[99] *Edwards*, 529 U.S. at 451; *Schlup v. Delo*, 513 U.S. 298, 314 (1995).

[100] *Schlup*, 513 U.S. at 314-15.

[101] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[102] *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

[103] Pet's. Reply Supp. Am. Habeas Pet. at 1 [Doc. No 43].

### B.    Actual Innocence Analysis

To clear the actual innocence hurdle of § 2244 and to excuse procedural default, Petitioner must "persuade[] the district court that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[104] This standard ensures "a meaningful avenue by which to avoid a manifest injustice," while ensuring that Ford's case is truly "extraordinary," recognizing the need to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case."[105] "The standard does not require absolute certainty of guilt or innocence, but it is demanding and will be satisfied only in rare and extraordinary cases where the evidence of innocence is so strong that it undermines confidence in the trial's outcome."[106] "[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."[107]

Ford objects to the R&R by urging the Court to review "the entire record" in evaluating his claim of actual innocence.[108] Yet, Ford failed to create the record he wishes this Court consider. He did not seek to introduce evidence of the allegedly undisclosed note nor its significance. He did not present testimony from three witnesses—Charles, Woods, and Garmon—who had previously provided affidavits claiming Ford was not responsible for the crime.

---

[104] *Schlup*, 513 U.S. at 329; *Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("[W]e assess the likely impact that the new evidence would have had on reasonable jurors.").

[105] *Schlup*, 513 U.S. at 324, 327.

[106] *Wallace*, 2 F.4th at 151.

[107] *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotations omitted) (citation modified).

[108] Pet's. Obj. at 8 [Doc. No. 78].

Ford did present both an affidavit and testimony of Frazier, who the Magistrate Judge found incredible. Frazier's affidavit stated that, on the day of the murder, he was in a house with his friend Ward, who exclaimed that a "young boy was disrespecting him!"[109] Frazier stated that Ward left the house, Frazier attempted to follow him, then Frazier returned to the house when he lost sight of Ward.[110] He then heard gunshots, went to the window, and saw Ward running.[111] Ward re-entered the house and said "that young boy won't disrespect me no more."[112] Frazier said that Ward had a gun, which was a "[b]lack .38 revolver."[113] Based on a review of Frazier's testimony and affidavit, this Court adopts Magistrate Judge Arteaga's credibility determination.

Ford urges this Court to consider the affidavits and testimony of Charles, Woods, and Garmon. In September 2007, Charles signed an affidavit testifying that she witnessed the murder, in which she did not identify the shooter but stated that she had known Ford for his whole life and he was not the shooter. She also stated that Young and Clay were not with her that night, contradicting their police statements presented at trial. Garmon and Woods signed affidavits in 2015 alleging that Wydell Ward committed the crime.

Petitioner raised claims in state court regarding the three affidavits, but Charles and Woods have not testified regarding Petitioner's innocence. Petitioner had the opportunity to present these witnesses alongside Fraizer at the hearing before Magistrate Judge Arteaga. Indeed, that hearing was intended to "address Ford's claim that he has newly discovered evidence

---

[109] *See* R&R at 10 [Doc. No. 72].

[110] Am. Habeas Pet. at 5 [Doc. No.14-1]; Ex. A Statement of Utilio Frazier [Doc. No. 14-3].

[111] Am. Habeas Pet. at 5 [Doc. No.14-1]; Ex. A Statement of Utilio Frazier [Doc. No. 14-3].

[112] Am. Habeas Pet. at 5 [Doc. No.14-1]; Ex. A Statement of Utilio Frazier [Doc. No. 14-3].

[113] Am. Habeas Pet. at 6 [Doc. No.14-1]; Ex. A Statement of Utilio Frazier [Doc. No. 14-3].

demonstrating actual innocence."[114] Thus, the Court must evaluate Charles and Woods' affidavits without the benefit of accompanying testimony.

Charles' affidavit states that she was available to testify at trial.[115] However, as addressed in Ford's first habeas petition, Charles was interviewed by police after the shooting, and she denied knowledge about it.[116] This failure to reveal information about the shooting at the time undermines Charles's credibility in her affidavit claiming she was available to testify at trial.

Petitioner no longer provides Woods' affidavit in support of his claim of actual innocence. Accordingly, the Court does not consider Woods's affidavit evidence that Petitioner is actually innocent.

Garmon, however, did testify before a PCRA court in an evidentiary hearing. His live testimony aligned with his affidavit, claiming that Wydell Ward killed Thompkins. However, the PCRA court found that Garmon was not credible. There were several inconsistencies between Garmon's testimony and facts established at trial. In the absence of a showing that this credibility determination was an unreasonable determination in light of the facts presented, this Court adopts the PCRA court's credibility determination finding Garmon incredible.

Also on the record is the trial testimony from Young and Clay, as well as their pretrial statements. In convicting Ford, the jury necessarily found the witnesses pretrial police statements more credible than their trial recantations. Much of Ford's actual innocence argument does not support or develop the account provided by Frazier, or other alleged witnesses. Rather, it

---

[114] 6/27/2024 Order [Doc. No. 46].

[115] *See Commonwealth v. Ford*, No. CP-0505-00101-2005, First PCRA Petition (Phila. Cnty. Ct. Comm. Pl. Feb. 19, 2008); Initial Habeas Pet. at 4 [Doc. No. 2].

[116] Initial Habeas Pet. at 4 [Doc. No. 2]; Am. Habeas Pet. Ex. E Statement of Karen Charles [Doc. No. 14-3].

relitigates sufficiency of the evidence, which Ford argued on direct appeal to the Pennsylvania Superior Court.[117]

Even considering Petitioner's *Brady* claim that Detective Rodden faced allegations of misconduct prior to trial,[118] these allegations do not establish Ford's innocence. While Petitioner's counsel could have sought to impeach the credibility of Detective Rodden with such information, Petitioner presents no evidence of misconduct in Rodden's interview of Clay. Clay's trial testimony that Rodden and another detective "kind of described to [Clay] what happened" does not amount to convincing evidence that Rodden committed misconduct in this case in line with any alleged pattern of misconduct.[119] Ford has presented no additional allegations by Clay or other evidence that Rodden committed misconduct in this case.

Given the high bar to establish a strong showing of actual innocence, Ford has not established that no reasonable juror would have voted to convict him in light of the new evidence. All Ford has presented are affidavits, signed a decade after the crime, that Wydell Ward committed the crime from two witnesses who proved not credible at evidentiary hearings, and an earlier affidavit, unsupported by testimony, from an established eyewitness who could not identify the shooter, but claimed it was not Ford. This evidence, while it may point to uncertainty, does not establish by clear and convincing evidence that Ford is innocent such that no reasonable juror would vote to convict him.

---

[117] *See Commonwealth v. Ford*, 927 A.2d 652 (Pa. Super. Ct.  Mar. 23, 2007).

[118] Mot. to Stay, Ex. A, Fifth PCRA Pet., at 7-8 [Doc. No. 62-1].

[119] Trial Tr. 3/30/2006 at 239. Clay's testimony that "[he] was just agreeing to everything" and alleging misconduct by the detectives was impeached at trial by the record of his initial statement to police. *Id*. at 239-249.

Accordingly, Petitioner's claims are barred both by § 2244's restriction on claims raised in second or successive habeas petitions and § 2254's prohibition on federal court consideration of procedurally defaulted habeas claims.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's Motion to Stay will be denied and Petitioner's Petition for a Writ of Habeas Corpus will be denied. An appropriate order will be entered.